

Main Office:
91. N. Franklin Street
Suite 108
Hempstead, New York 11550
Tel.: 516/280.4600
Fax: 516/280.4530
MFLawNY.com

Marcus Monteiro
516/280.4600 ext. 107
mmonteiro@mflawny.com

May 2, 2024

**VIA ECF**
The Honorable Judge Arlene R. Lindsay
United States Magistrate Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      RE:    *Michael McGuire et al. v. Antonio DeCresecnzo et al.*
              Civ. No.: 23-5552 (JMA)(ARL)

Dear Judge Lindsay:

      This Firm represents Plaintiffs in this Fair Labor Standards Act/New York Labor Law case. The Parties representing Plaintiffs and Defendants have agreed to settle their claims and respectfully request that the Court authorize and approve the attached settlement agreement (the "Settlement Agreement") (Ex. 1). Cheeks v. Freeport Pancake House, Inc., et al., 796 F.3d 199 (2d Cir. 2015). As explained below, the Parties respectfully state that the Settlement Agreement is fair, reasonable, and equitable.

**A.**      **Background**

      Nine named-plaintiffs consisting of Michael McGuire, Carlos Aversano, Edwin Siagaran, Lelis Palacios, Manuel Hernandez, Jose Mejia, Santos Vigil, Juan Molina, and Jose Rios (collectively, "Plaintiffs") alleged that they worked for a pizzeria/restaurant called Positano Brick Oven Pizza & Ristorante ("Positano"). Plaintiffs filed their Complaint against Defendants Positano and its alleged current owner, Jorge Gonzalez and alleged prior owner Tony Decrescenzo (collectively, "Defendants") asserting, *inter alia*, claims for unpaid overtime under the FLSA and the New York Labor Law ("NYLL"). Defendants denied the allegations, contest the dates of Plaintiffs' alleged employ, contest the dates and times that Plaintiffs claimed to have worked, and further claim that Plaintiffs were properly paid for all hours worked. Defendants contend that their wage practices do not violate either the FLSA or New York Labor Law and comply all applicable laws, rules and regulations.

      The Complaint was filed on July 21, 2023 and Answered by Defendants. The Parties exchanged extensive discovery and conducted a mediation session before Martin F. Scheinman of Scheinman Arbitration and Mediation Services on March 1, 2024. It was during that second mediation that the Parties agreed to settle their dispute under the terms contained in the Settlement Agreement.

### A. The Settlement Agreement between Plaintiffs and Defendants is Fair and Reasonable

The attached proposed settlement agreement warrants approval as it is fair, reasonable, and adequate. Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." Le v. SITA Info. Networking Computing USA, Inc., 2008 WL 724155, at *1 (E.D.N.Y. 2008); Aponte v. Comprehensive Health Mgmt., Inc., 2013 WL 1364147, at *4 (S.D.N.Y. 2013) (Courts typically "regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement.")

Here, the parties have engaged in significant discovery efforts, exchanged voluminous documents and held multiple "meet-and-confers" and telephone conferences. They have each gathered sufficient information to permit them to assess the strengths and weaknesses of the asserted claims and the respective defenses. The Parties negotiated over months, including a formal mediation session, before the framework of an agreement was reached. Plaintiffs are represented by competent counsel well versed in employment law. Likewise, Defendants are represented by competent counsel well-versed in employment law and who presented strong economic defenses. Therefore, the arm's length bargaining between the represented parties weighs in favor of finding a settlement reasonable.

This matter settled for the sum of $300,000.00 for the claims of all Plaintiffs. Plaintiffs have been informed of, and have approved, the terms of the proposed settlement, including the overall amount to be paid by Defendants, as well as the individual amounts to be paid to each plaintiff. As such, there have been no objections to the settlement. The Settlement Agreement does not have a confidentiality provision, an overbroad waiver, or a clause that bars negative statements without a carve out for truthful statements. Perez v. Harlem 421 Food Corp., 2023 WL 6717303, at *1 (S.D.N.Y. 2023).

Plaintiffs believe that their direct FLSA/NYLL violation damages are $2,441,844.00. The total settlement of $300,000 represents over 12% of the total potential damages. Furthermore, the settlement avoids the risk of litigation on both sides and brings finality to this dispute. Driving this settlement was the central fact that Defendants may not have substantial assets to pay a judgment should Plaintiffs achieve one – as Defendants business is comprised of a single restaurant – not some large corporation.

A major factor driving this settlement is that Plaintiffs have not located significant assets owned by Defendants which may collateralize a large judgment should Plaintiffs obtain one. Indeed, from Plaintiffs investigation, Defendants largest assets appears to be their residential homes, which are both subject to homestead exemptions. Thus, there are legitimate concerns about the collectability of a judgment against Defendants – militating towards settlement. Cinema 60, LLC, at 365 ("Plaintiffs' counsel actively sought a settlement because of plaintiffs' legitimate concerns about the collectability of any judgment against the defendants."); Cruz v. Relay Delivery, Inc., 2018 WL 4203720 (S.D.N.Y. 2018)("Moreover, plaintiffs in this case have expressed serious concerns about collectability and have agreed to a payment schedule, which "militates in favor of finding a settlement reasonable."); Hart v. RCI Hosp. Holdings, Inc., 2015 WL 5577713, at *10 (S.D.N.Y. 2015) (significant "risk that plaintiffs would not be able to collect, or fully collect, on a judgment" supported approval of settlement agreement, which "[g]uaranteed recovery from the other two defendants in the event that [one] prove[d] unable to pay the entire settlement amount").

Therefore, no factors weigh against allowing the settlement to proceed as requested because: a) the recovery represents a large amount of the potential damages; b) Defendants explicitly deny any wrongdoing, and c) continuing to develop the record will only serve to enlarge costs and risk on both sides. Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335-336 (S.D.N.Y. 2012).

Thus, the Parties agree that the settlement agreement represents a reasonable compromise of all their respective positions. The proposed settlement regarding attorney fees and expenses is also fair and reasonable.

### B. Plaintiffs' Attorneys' Fees Should be Approved

Plaintiffs seek 1/3 of the Settlement Amount for their attorneys' fees, being $100,00.00, plus costs of $5,744.00 (consisting largely of filing, service and mediator's fees).  By statute under both the FLSA and NYLL, Plaintiffs are entitled to recover attorneys' fees regarding Plaintiffs' wage claims. In this matter, Plaintiffs have all signed retainer agreements wherein they have agreed to pay Plaintiffs' counsel the amount of one-third of the settlement amount, exclusive of costs and expenses associated with the Action.  The understanding is reflected in the Settlement Agreement.

Additionally, Plaintiffs' counsel represented Plaintiffs on a one-third contingency basis and assumed the risk of receiving payment only if the case was successful, which contingency was contractually agreed to by each Plaintiff. Cisek v Natl. Surface Cleaning, Inc., 954 F. Supp. 110, 111 (S.D.N.Y. 1997) (finding that the sum sought by plaintiffs' counsel was reasonable, the settlement was untainted by conflict of interest, and there was no reason to conclude that plaintiffs' counsel benefited at the expense of their clients); Chapman-Green v. Icahn House West LLC, 2013 U.S. Dist. LEXIS 25671, 2013 WL 658245, at *2 (S.D.N.Y.,2013) (amount of fees "is of little consequence' when fees are consensual")(internal citation and quotation omitted); see also Mireku v. Red Vision Sys., Inc., 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. 2013).

Indeed, contingency fee agreements are common and are routinely approved in the Second Circuit in FLSA cases, as the plaintiffs' counsel assumes all of the risk in pursuing these cases. See, e.g., Calle v. Elite Speciality Coatings Plus, Inc., 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. 2014) ("A one-third contingency fee is commonly accepted fee in this Circuit."); Hynun v. Ippudo USA Holdings, 2016 U.S. Dist. LEXIS 39115 (S.D.N.Y. 2016) (Judge Alison J. Nathan)("Fee award representing one third of the total recovery are common in this District."); Janko, et al. v. Patsy's Italian Restaurant, Inc. et al., 15-cv-4995 (S.D.N.Y. 2016) ("Moreover, awarding a percentage of the settlement amount [33%] in this case, which settled relatively early and before depositions occurred, is appropriate to avoid the lodestar method's potential to create a disincentive to early settlement.") (quotations and citations omitted); Garcia v. Atlántico Bakery Corp., 2016 U.S. Dist. LEXIS 84631, at * 2 (S.D.N.Y. 2016 )(One-third of the total award is customary contingency percentage in FLSA cases.); Villalva-Zeferino v. Park, 2016 U.S. Dist. LEXIS 19125, at * 4 (S.D.N.Y. 2016) ("I do not address the fee arrangement between plaintiff and his counsel because I do not believe I am required under Cheeks v. Freeport Pancake House, Inc…"); Xiao v. Grand Sichuan Int'l St. Marks, Inc., 2016 U.S. Dist. Lexis 99669 (S.D.N.Y. 2016)(approving 33% contingent fee of total recovery, including backpay, liquidated damages and fees); Sewell v. Bovis Lend Lease LMB, Inc., 2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 16, 2012) (approving 33% contingent fee); Johnson v. Brennan, 2011 U.S. Dist. Lexis 105755 at *39 (S.D.N.Y. Sept. 11, 2011) (same); Prasker v. Asia Five Eight LLC, 2010 U.S. Dist. Lexis 1445 at *6 (S.D.N.Y. Jan. 6, 2010) (same with fee award of $1,050,000); Mohney v. Shelly's Prime Steak, 2009 U.S. Dist. Lexis 27899 at *5 (S.D.N.Y. Mar. 31, 2009) (same with fee award of $3,265,000); Flores v. Anjost Corp.,

2014 U.S. Dist. Lexis 11026 (S.D.N.Y. 2014) Awarding 33 1/3% contingent fee of $1,050,000 in FLSA and New York State wage and hour lawsuit); Aponte v. Comprehensive Health Management, Inc., 2013 U.S. Dist. Lexis 47637 (S.D.N.Y. 2013) (Awarding 33 1/3% contingent fee on $6,500,000 fund in case involving FLSA and New York State law wage claims).

The Second Circuit favors the use of the contingent percentage of fund method to compensate attorneys in overtime wage and hour actions. See, e.g., McDaniel v. County of Schenectady, 396 F.3d 95 (2d Cir. 2005). "Courts in the Southern District of New York have repeatedly explained that "In wage and hour class action lawsuits, public policy favors a common fund attorney's fee award." Deleon v. Wells Fargo Bank, N.A., 2015 U.S. Dist. Lexis 65261 at *5 (S.D.N.Y. 2015); Johnson, 2011 U.S. Dist. Lexis 105775 at *39. The Court's reasoning is simple: "[T]he percentage method directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution ad early resolution of litigation." Monserrate v. Equipment, Inc., 2012 U.S. Dist. Lexis 164265 at *3 (E.D.N.Y. Nov. 16, 2012). That incentive is the implicit possibility that plaintiffs' counsel will fail to make any recovery of their fees. Butt v. Megabus Ne. LLC, 2012 U.S. Dist. Lexis 137683 at *22 (S.D.N.Y. Sep. 25, 2012) ("Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation. A percentage-of-recovery fee award of 33.3% is consistent with the Second Circuit's decision in Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany, where the Court held that a 'presumptively reasonable fee" considers what a "reasonable, paying client' would pay." citing Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany 493 F.3d 110, 111-12 (2d Cir. 2007).

Courts will sometimes "cross-check" the reasonableness of an award against the lodestar method and have awarded a lodestar multiplier of up to eight times the reasonable hour rate by time expended, and in some cases, even higher multipliers. Viafara v. Mciz Corp., 2014 WL 1777438, (S.D.N.Y. 2014). However, where the lodestar analysis is used "as a mere cross-check" on an otherwise acceptable percentage of the fund, "the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 436 (2d Cir. 2007); Goldberger v. Integrated Res., Inc., 209 F.3d 43 at 50 (2d Cir. 2000) (The hours "need not be exhaustively scrutinized.")

Finally, "The Second Circuit has set forth six factors to evaluate the reasonableness of attorneys' fees in the FLSA settlement context: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." Goldberger., 209 F.3d 43 at 50.

### a. Time and Labor Expended by Plaintiffs' Counsel

To date, Plaintiffs' counsel's work consisted of, without limitation: preliminary intake and investigations, filing of the Complaint; appearance at status conferences, preparation for, and appearance at a mediation session; extensive discovery review of voluminous records; consulting with nine Plaintiffs throughout the litigation; preparing disclosures; negotiations with Defendants' counsel; edits to the settlement agreement and the instant papers in support of the settlement. According to Plaintiffs' detailed billing records, they have expended 96.5 attorney hours, at a billing rate of $450, totaling fees of $43,425.00.

Thus Plaintiffs maintain that an award of $100,000.00 to Monteiro & Fishman LLP for attorneys' fee, when cross-checked with their reasonable attorney hours and $450 per hour billing rate, totaling of $43,425.00, is fair and reasonable as it represents a lodestar multiplier of about 2.3 – well below what is typically awarded in this Circuit. In re Lloyd's Am. Trust Fund Litig., 2002 WL 31663577, at *27 (S.D.N.Y. 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); Maley v. Del Global Techs. Corp., 186 F.Supp.2d 358, 369 (S.D.N.Y. 2002) (finding multiplier of 4.65 "well within the range awarded by courts in this Circuit and courts throughout the country"); Ramirez v. Lovin' Oven Catering Suffolk, Inc., 2012 WL 651640, at *4 (S.D.N.Y. 2012) (granting attorneys' fees equal to 6.8 times lodestar); Davis v. J.P. Morgan Chase & Co., 827 F.Supp.2d 172, 184– 86 (W.D.N.Y. 2011) (awarding multiplier of 5.3 in wage and hour class action); In re RJR Nabisco, Inc. Sec. Litig., 1992 WL 210138, at *5 (S.D.N.Y. 1992) (awarding multiplier of 6); Cosgrove v. Sullivan, 759 F.Supp. 166, 167 n. 1 (S.D.N.Y. 1991) (awarding multiplier of 8.74).

Additionally, Plaintiffs request reimbursement of their out-of-pocket expenses, which totaled $5,744.00. Plaintiffs' counsel has not charged for typical expenses like Westlaw or Lexis research fees, travel or photocopying fees. "It is well-settled in this Circuit that 'attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." Tlacoapa v. Carregal, 386 F.Supp.2d 362, 374 (S.D.N.Y.2005).

### b.    The Magnitude and Complexities of the Litigation

This matter was a complex involving nine Plaintiffs and Defendants, requiring extensive investigation, and analysis of hundreds of documents to establish their entitlement to recovery. Accordingly, the complexity of this matter favors an award of the requested attorneys' fee award. Febus v. Guardian First Funding Grp., LLC, 870 F.Supp.2d 337, 340 (S.D.N.Y. 2012) ("[C]ourts have recognized that FLSA cases are complex and that [a]mong FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to [Rule] 23 in the same action as the FLSA 'opt in' collective action pursuant to U.S.C. § 216(b).")

### c.    The Risk of the Litigation

The "[u]ncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award." Febus, 870 F.Supp.2d at 340. As detailed above, the uncertainty of continued litigation, along with the uncertainty of the collectability should Plaintiffs obtain a judgment, militated toward a resolution at this juncture.

### d.    The Quality of Representation

"The 'most critical factor' in what is a reasonable attorney's fees [award] 'is the degree of success obtained' by the plaintiff." Velasquez v. Digital Page, Inc., 124 F.Supp.3d 201, 204 (E.D.N.Y. 2015) (quoting Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 152 (2d Cir. 2008); Asare v. Change Grp. of N.Y., Inc., 2013 WL 6144764, at *21 (S.D.N.Y. 2013) ("Class Counsel's skill and experience was directly responsible for this favorable settlement reached in an efficient manner without great Court intervention at an early stage of litigation."). Here, Plaintiffs believe that they have successfully obtained a favorable settlement that results in a substantial award to Plaintiffs in light of the defenses provided by Defendants.

Additionally, Plaintiffs' counsel, Marcus Monteiro, is an experienced litigator well versed in employment law. Specifically, he has been a litigator since 2002 and has been deemed qualified to represent Nassau County in employment and labor law, as well as class actions, since 2014. In 2015, Mr. Monteiro was the principal attorney representing County of Nassau, Nassau County Sheriff's Department and Nassau County Policy Department, at a full jury trial in the E.D.N.Y. in a case involving employment-related claims. Wagner v. County of Nassau et al., 11-cv-1613 (E.D.N.Y. 2015).

Mr. Monteiro is currently a director of the Nassau County Bar Association, the current Chair of its Labor and Employment Committee, and the current the Editor-in-Chief of the NCBA Wage/Hour Newsletter – a publication that reports on all wage/hour cases in the EDNY and SDNY. Recent settlements in F.L.S.A. cases venued in the EDNY where this Court approved Mr. Monteiro's 33 1/3% contingency fee include: Escobar v. Hernandez et al., 22-04482 (E.D.N.Y. 2022)(approved on February 21, 2024); Contreras et al. Timinelli, 20-cv-03531 (E.D.N.Y. 2023)(approved on December 12, 2023); Valle v. Valencia, 20-cv-05375 (E.D.N.Y. 2023)(approved on Nov. 29, 2023); Justo Claros et al. v. Pietro Cipriano et al., 22-cv-2706 (E.D.N.Y. 2023); Gutierrez et al. v. DaVinci's Restaurant et al., 20-cv-05380 (E.D.N.Y. 2023); Subhan et al. v. Ram Caterers of Old Westbury et al., 20-cv-5541 (E.D.N.Y. 2022);Ramires v. Bradley et al., 17-cv-5728 (E.D.N.Y. 2019); Hernandez v. Mint Garden City, 17-cv-04792 (E.D.N.Y. 2019); Franco v. Metro Flowers, 18-cv- 01343 (E.D.N.Y. 2020); Zavala v. Cipriano Landscaping – Nursery Inc., 18-cv-00178 (E.D.N.Y. 2019) ; Reyes v. Plattduetsche Park Restaurant (E.D.N.Y. 2017); Salmeron v. Gismondi (E.D.N.Y. 2017) ; Peraza v. Dimou et al., 18-cv-00042 (E.D.N.Y. 2019); Mendez v. Anthony Cortina et al.,16- cv-04372 (E.D.N.Y. 2017); Mauro Molina Lopez v. Giovanni Annunziata et al., 17-cv-0987 (E.D.N.Y. 2017); Ochoa et al. v. Kaptan et al., 16-cv-02295 (E.D.N.Y. 2017); Magalhaes v. Island Tennis, Inc. et al, 15-5859 (E.D.N.Y. 2016); Romero v. Nassau Fire Apparatus, 15-cv-5861 (E.D.N.Y. 2015); Lemus v. Campanelli Landscaping Inc. (E.D.N.Y. 2015); Bustamante v. Executive Diner (E.D.N.Y. 2015) Trigueros v. Leo's Restaurant & Bar (E.D.N.Y. 2014); Santisteban v. Davis Vision, Inc. (E.D.N.Y. 2013)

Before focusing on employment law, Mr. Monteiro was experienced class counsel and worked at a national law firm, having prosecuted class-actions throughout the United States. Muehlbauer v. General Motors Corp., 05-cv-02676 (N.D. Ill.) (Represented purchasers of certain vehicles manufactured by General Motors in a class action alleging breach of warranty); In re American Honda Motor Co. Oil Filter Products Liability Litigation, 06-ml-01737 (C.D. Cal.) (Represented purchasers of certain vehicles manufactured by American Honda Motor Co. in a class action alleging breach of warranty.); Marple v. Countrywide Financial Corporation and Countrywide Home Loans, Inc., 07-cv-4402 (D. N.J.) (Represented residential and commercial real estate purchasers who were allegedly charged and paid mark-ups by Countrywide Financial Corporation and Countrywide Home Loans, Inc. for real estate settlement services in violation of the Real Estate Settlement Procedures Act and the New Jersey consumer protection statute.); In re FedEx Corp. Shareholder Derivative Litigation, 08-cv-02284 (W.D. Tenn.) (Represented a pension fund in a shareholder derivative action against the Board of Directors of FedEx Corp alleging breaches of fiduciary duties.)

e.  **The Requested Fee in Relation to the Settlement or The Lodestar Cross-check**

As noted above, the last step of the analysis is to cross-check the fee award against the lodestar multiplier. This step ensures that an otherwise reasonable percentage fee would not lead to a windfall for counsel. In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 306 (3d Cir. 2005) ("Courts also consider the size of the settlement to ensure that the percentage award does not constitute a 'windfall."); Siddiky v. Union Square Hosp. Grp., LLC, 2017 WL 2198158, at *11 (S.D.N.Y. 2017). As detailed above, the attorneys' fees requested herein represent a lodestar multiplier of under 2.3 – well below what is typically

awarded in this Circuit.

### f. Public Policy Considerations

Public policy favors this Court approving the Settlement. "Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and NYLL." Deleon v. Wells Fargo Bank, N.A., 2015 U.S. Dist. Lexis 65261 at *5 (S.D.N.Y. 2015) citing Goldberger v. Integrated Res. Inc., 209 F. 3d 43,51 (2nd Cir. 2000) (Commending the general 'sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest.")

Accordingly, the Parties respectfully request judicial approval of the Settlement Agreement and jointly thank the Court for considering this request.

Dated: May 2, 2024

Very truly yours,

/s/
Marcus Monteiro